Question Submitted by: The Honorable Mike Osburn, Oklahoma House of Representatives, District 81
2024 OK AG 12
Decided: 08/21/2024
Oklahoma Attorney General Opinions
Cite as: 2024 OK AG 12, __ __

 
¶0 This office has received your request for an Attorney General Opinion in which you ask the following question:
Does a member of the Legislature have a right to attend an executive session of a state agency, board, or commission?
I.
SUMMARY
¶1 Yes. Under the Oklahoma Open Meeting Act ("Act"), a legislator who is a member of a legislative committee with jurisdiction over actions of the state agency, board, or commission, is authorized to attend an executive session of the state body. The only limitations are for executive sessions concerning the purchase or appraisal of real property under the provisions of (D) and when the Legislature or legislator is involved in litigation with a state agency, board, or commission.
II.
BACKGROUND
¶2 The question presented to this office stems from your recent attempt to attend the executive session of the State Board of Education ("SBE" or "State Board"). Additional members of the Legislature have also attempted to attend recent executive sessions of the SBE but have been denied. After the State Board denied Senator Mary Boren access to an executive session in June 2024, legal counsel retained by the SBE requested this office's opinion on the lawfulness of the denial. In response, this office advised the SBE that the provisions of authorize any legislator assigned to a committee that has jurisdiction over the actions of a state agency, board, or commission, to attend an executive session of that body. Other public bodies have interpreted the Act consistently with this position. For instance, three members of the Legislature attended the University of Oklahoma Board of Regents' executive session in 2019. And Senator Adam Pugh and Representative Mark McBride reportedly attended recent executive sessions conducted by the Oklahoma State Regents for Higher Education. Simply put, it appears that SBE interprets section 310 differently than other Oklahoma state agencies, boards, and commissions.
¶3 The Act generally requires that all meetings of public bodies be open to the public. The policy and purpose of the Act is '"[t]o encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems."' Andrews v. Indep. Sch. Dis. No. 29, , ¶ 7, , 931 (citing ). Meetings of public bodies must be open and occur at times and places convenient to the public. .
¶4 Relevant to the subject question, section 307 permits public bodies to discuss public business in executive (closed) session under numerous instances. . Yet even when an agency convenes in executive session, the Act authorizes any member of the Legislature to attend any executive session if the legislator is on a committee with jurisdiction over the actions of that state body. Title 25, section 310 states:
Any member of the Legislature appointed as a member of a committee of either house of the Legislature or joint committee thereof shall be permitted to attend any executive session authorized by the Oklahoma Open Meeting Act of any state agency, board or commission whenever the jurisdiction of such committee includes the actions of the public body involved.
It is settled that "[t]he goal of any inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature." Yocum v. Greenbriar Nursing Home, , ¶ 9, , 219. "The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses. When the text of a statute is plain and unambiguous, this office must 'give effect to the legislative intent and purpose as expressed by the statutory language.'" Am. Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, , ¶ 33, , 64. Put differently, when statutory language is clear, this office "may not search for its meaning beyond the statute itself, but will give it the meaning intended by the Legislature." Armstrong v. Sewer Improvement Dist. No. 1, , ¶ 13, , 1017.
¶5 When statutory language is ambiguous or "susceptible to more than one reasonable interpretation[,]" courts will "apply rules of statutory construction" to ascertain legislative intent. Am. Airlines, Inc., , ¶ 33, 341 P.3d at 64. One of those well-established rules requires reading the "whole act in light of its general purpose and objective considering relevant provisions together," and resolving any doubt by looking to "other statutes relating to the same subject matter." McIntosh v. Watkins, , ¶ 4, , 1096. Similarly, "a statute should be given a construction which renders every word and sentence operative rather than one that renders some words or sentences idle and nugatory." Case v. Pinnick, , ¶ 6, , 60. Finally, consideration is also given to the "various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying the intent." YDF, Inc. v. Schlumar, Inc., , ¶ 6, , 658.
III.
DISCUSSION
A. Section 310 is constitutional and does not violate the separation of powers provision in article IV, section 1 of the Oklahoma Constitution. 
¶6 The framers of the Oklahoma Constitution gave the Legislature the power to legislate policy and create checks and balances on the Governor, intentionally creating a weak state chief executive. Ritter v. State, , . In Ritter, the Oklahoma Supreme Court explained:
Oklahoma's historical underpinnings were economically conservative. Fearing excessive power in the hands of one individual, the framers of the Oklahoma Constitution intentionally created a weak state chief executive. The Governor's authority is limited by the Constitution, because the Chief Executive may exercise only the power specifically granted by the Legislature. The Governor is without authority to exercise a discretion not validly and specifically granted by the statutory law and not within the power conferred upon the Chief Executive by the Constitution.
, ¶ 15, 520 P.3d at 379 (emphasis added).
¶7 Article V, section 60 of the Oklahoma Constitution vests the Legislature with the authority to create checks and balances within the Executive Department. A legislative act is presumed to be constitutional and will be upheld "unless it is clearly, palpably and plainly inconsistent with fundamental law." Taylor v. State and Educ. Employees Group Ins. Prog., , ¶ 6, 897 P.2d at 277. Generally, courts will not declare a statute unconstitutional unless its invalidity appears beyond a reasonable doubt. Bailey v. State Bd. of Pub. Affs., , ¶ 18, , 240. Indeed, the Oklahoma Supreme Court has held that "[i]t is our duty to hold [a legislative act] valid unless there is a prohibition in the Constitution which precludes its enactment by the Legislature." Wentz v. Thomas, , ¶ 35, , 70. As Justice Riley explained in a concurrence in Wentz v. Thomas, , ¶ 125, , 84:
it is obvious that the Hamiltonian idea of a centralized form of government by a concentration of all executive authority in one office, was not the public policy adopted by the people and expressed in Constitution of Oklahoma. To the contrary, the Constitution of this state embraced the political idea of a plural executive department--one consisting of many executive officers who would obey the law rather than policy of a man who might happen to occupy the position of Governor. 
(emphasis added).
¶8 Viewed in context of the state agencies, boards, and commissions, section 310 is a check and balance on these bodies, which are predominantly appointed by the Governor. Concerning the State Board of Education, all members other than the Superintendent of Public Instruction who serves as a member and chairperson are appointed by the Governor. .
¶9 Additionally, article V, section 36 of the Oklahoma Constitution extends the authority of the Legislature to all rightful subjects of legislation, and specific grants of authority in the Constitution do not work as restrictions upon the legislative power. Thus, the Legislature generally may legislate in all areas, except those which the Constitution prohibits. In 1977, the Legislature exercised its constitutional lawmaking power to enact section 310, amending it once since then on grounds irrelevant here. 1977 Okla. Sess. Laws ch. 214, § 10; amended by 1981 Okla. Sess. Laws ch. 272, § 7. Nothing in the Oklahoma Constitution expressly prohibits a legislator's attendance in an executive session of a state agency, board, or commission. Even more, nothing arms an executive branch agency or board through its hired counsel with the authority to overrule a legislator's right to attend an executive session under section 310. Therefore, Section 310 is constitutional.
B. The provisions of require a state agency, state board, or state commission to permit a legislator to attend any executive session of that public body if the legislator is a member of a committee with jurisdiction extending to the actions of that public body.
¶10 For four reasons, section 310 is clear and can only be read one way: any legislator who sits on a committee with jurisdiction over the actions of a state agency, board or commission must be permitted to attend any executive session of that state body.
¶11 First, the use of the word "shall" before the phrase "be permitted to attend" removes any discretion from the state body to bar a legislator from the executive session. Minie v. Hudson, , ¶ 8, ("The use of 'shall' by the Legislature is normally considered as a legislative mandate equivalent to the term 'must', requiring interpretation as a command."); see also Lafalier v. Lead-Impacted Communities Relocation Assistance Tr., , ¶ 40, (quoting Wylie v. Chesser, , ¶ 9, , 76 "The word 'shall' is generally treated as mandatory--a nondiscretionary command--in both contracts and statutes.") and Indep. Sch. Dist. No. 12 v. State, , ¶ 32, ___ P.3d ___, 2024 WL 2931057.
¶12 Second, section 310 does not limit the executive sessions that a qualifying legislator may attend. If the Legislature intended to carve out exceptions to this right, it would have done so. See, e.g., .2 (providing that school board members involved in litigation may be excluded from executive sessions by a majority vote of the board members); 70 O.S.2021, § 5-113.1 (board of education members shall not attend executive sessions involving personnel or litigation matters regarding a person to whom they are related); (D) (limiting attendance in an executive session to discuss the purchase or appraisal of real property to members of the public body, the attorney for the public body and the immediate staff of the public body). Accordingly, a plain reading reveals that the only qualifications for attending an executive session under section 310 are being (1) a current legislator and (2) a member of a legislative committee with jurisdiction over the actions of the state body at issue. . Determining the latter of these qualifications requires an interpretation of the terms "jurisdiction" and "action."
¶13 The Oklahoma Supreme Court "has relied on dictionary definitions to provide the plain, ordinary meaning of terms." Brassfield v. State, , ¶ 8, , 941. The term "jurisdiction" generally means a "government's general power to exercise authority over all persons and things within its territory." BLACK'S LAW DICTIONARY, (12th Ed. 2024). The term "action" means "[t]he process of doing something; conduct or behavior." BLACK'S LAW DICTIONARY, (12th Ed. 2024); see also action, Merriam-Webster, https://www.merriam-webster.com/dictionary/action (last visited August 21, 2024).
¶14 These dictionary definitions of "jurisdiction" and "action" establish that a legislator must be a member of a legislative committee that has power to exercise authority over the conduct, duties and other things that a state body does. Thus, in the context of section 310, a legislator must be permitted to attend an executive session of a state agency, board, or commission if the legislator is a member of a committee with the general power to exercise authority over actions of the state agency, board, or commission.
¶15 Article V, section 1, of the Oklahoma Constitution expressly identifies the Legislature as the lawmaking authority of the State. The Legislature may not abdicate its responsibility to resolve fundamental policymaking by delegating that function to others or by failing to provide adequate directions for implementing its declared policy. Democratic Party v. Estep, , ¶ 16, n.23, , 277. Rather, the Legislature must enact laws to "establish its policies and set out definite standards for the exercise of any agency's rulemaking power." Id. ¶ 16, 652 P.2d at 277--78. Put another way, the Legislature must provide an agency with certain contours of its policy goals. Here, the Legislature authorizes the SBE to implement a myriad of state laws, including the following non-exhaustive list:
1. Appoint, prescribe the duties, and fix the compensation of a secretary, an attorney, and all other personnel necessary for the proper performance of the functions of the State Board of Education. The secretary shall not be a member of the Board;
2. Promulgate rules governing the classification, inspection, supervision, and accrediting of all public nursery, kindergarten, elementary and secondary schools;
3. Have authority in matters pertaining to the licensure and certification of persons for instructional, supervisory, and administrative positions and services in the public schools of the state subject to the provisions of Section 6-184 of this title, and shall formulate rules governing the issuance and revocation of certificates for superintendents of schools, principals, supervisors, librarians, clerical employees, school nurses, school bus drivers, visiting teachers, classroom teachers, and for other personnel performing instructional, administrative, and supervisory services
.
¶16 According to the Oklahoma State Senate, the Senate Education Committee works on law and policy relating to the State's pre-kindergarten through twelfth grade public education system and its work expressly includes the State Department of Education and State Board of Education. https://oksenate.gov/committees/education. The laws and policies of the State, as relating to education, work through the legislative process, inclusive of the Senate Education Committee. Therefore, it logically follows that under section 310, a legislator who is a member of the Senate Education Committee is entitled to attend any executive session of the State Board of Education. Furthermore, and as another example, because the Senate Administrative Rules Committee reviews agency administrative rules and provides legislative oversight of rulemaking, a senator on this Committee is authorized to attend an agency's executive session, including one implementing or relating to promulgated administrative rules or agency executive sessions involving administrative hearings conducted pursuant to an agency's promulgated administrative rules. https://oksenate.gov/committees/administrative-rules. This same analysis applies to other legislative committees and state bodies.
¶17 Third, determining whether a legislator is entitled to attend an executive session depends on whether the legislator sits on a committee with jurisdiction over the actions of the agency involved. In 1978, this office was asked whether a legislator, who is a member of the Education Committee, has the right to attend an executive session of a local school district board of education convened to discuss employment matters. . In turn, this office phrased the question as whether the legislator is a member of a committee with jurisdiction over the public body's actions "incident to the subject executive session." Id. ¶ 6. In doing so, the Attorney General interpreted section 310 too narrowly. It is not the substance of the executive session item and the state body's action relating thereto that determines whether section 310 applies, but whether the committee that the legislator serves on has general oversight of that state body.
¶18 Suppose the State Board identifies an executive session regarding a licensure revocation matter. In that situation, a legislator on either of the committees addressed above is entitled to attend the executive session because those committees have general oversight and jurisdiction of the SBE relating to the law and policy of issuing and revoking licenses. This is how the process constitutionally works. Accordingly, then, under section 310, a legislator is entitled to attend an executive session in which his or her committee has general oversight. A plain reading of section 310 supports this determination. (focusing on the "public body involved" and not the ability to determine "the actions involved" in the executive session). This office does not read into the law that which is not there. Kentucky Fried Chicken v. Snell, , . Accordingly, is withdrawn. And because legislators are presumed to act in good faith and given the purpose and breadth of section 310, this office concludes that the state body must accede, absent judicial intervention otherwise, to a legislator's representation of appropriately qualifying to attend an executive session under section 310. Freedom From Religion Foundation, Inc., v. Abbott, 58 F.4th 824, 833 (5th Cir. 2023) (state actors, as public representatives, are presumed to act in good faith).
¶19 Fourth and finally, the Legislature only applied this section to state agencies, boards, and commissions. The word "state" modifies every noun that follows. See A. Scalia and B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) (Series-Qualifier Canon). Construing the same phrase in a different statute, the United States Court of Appeals for the Tenth Circuit has stated as follows:
The prepositive adjective 'state' modifies each noun in the parallel series: agency, board or commission.' As a matter of grammar, then, the statute refers to a state agency, state board, or state commission. This grammatical construction reflects common sense. Why would the legislature adopt a statute regulating county "board" or "commission," but not county "agencies"? The legislature obviously intended to regulate state entities regardless of whether they identified themselves as "boards," "commissions," or "agencies." 
Midway Leasing, Inc. v. Wagner Equip. Co., 842 F. App'x 209, 2021 WL 71254 at 216 (10th Cir. Jan. 8, 2021) (unpublished).
¶20 Similarly here, the Legislature no doubt intended to authorize a legislator's attendance at an executive session of state entities, regardless of whether they are identified as a "board," "commission," or "agency." Any suggestion otherwise is contrary to grammar and common sense. Accordingly, consistent with this Opinion, the plain and unambiguous language of section 310 requires that a qualifying legislator be permitted to attend an executive session of a state agency, state board or state commission. This includes executive sessions under (B)(4), for confidential communications with the state body's attorney.
C. Except for the limited exception when the Legislature is involved in litigation with a state agency, board, or commission, the attorney-client privilege does not alter the conclusion that a qualifying legislator shall be permitted to attend an executive session of a state agency, board, or commission.
¶21 The Act authorizes executive sessions for engaging in confidential communications with the state body's legal counsel to discuss pending litigation, claim, or action. (B)(4). This authorization is similar to Oklahoma's statute creating and limiting the attorney-client privilege. . Accordingly, Oklahoma's attorney-client privilege statute is instructive to answering the claim that legislators are not permitted in section 307(B)(4) executive sessions. Under that statute, there is no attorney-client privilege:
as to communications between a public officer or agency and its attorney unless the communication concerns a pending investigation, claim or action and the court determines that disclosure will seriously impair the ability of the public officer or agency to process the claim or conduct a pending investigation, litigation or proceeding in the public interest.
(D).
¶22 The privilege, if it exists at all, goes only to confidential communications, defined as communications "not intended to be disclosed to third parties other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Id. § 2502(A)(5).
¶23 Under section 2502, the "client has a privilege...to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Id. § 2502(B). To the extent the attorney-client privilege exists, a state body may prevent any legislator in attendance in an executive session from disclosing the confidential communications in the executive session. And while Oklahoma law does not compel individuals in executive session to keep the information obtained confidential, this is the very purpose for the executive session. Furthermore, nothing prohibits any member of the public body or its attorney from instructing a legislator that the information and discussions in the executive session must remain confidential. Compare ARIZ. REV. STAT. ANN. § 38-431 (2024).
¶24 The Oklahoma Supreme Court has also conclusively found "no Legislative intention to abrogate the principle of attorney-client confidentiality where public bodies are involved." Oklahoma Ass'n of Mun. Attys. v. State, , ¶ 19, , 1315. The Oklahoma Court of Civil Appeals has also acknowledged that protecting the disclosure of attorney communications in executive sessions provides a public benefit in avoiding costly litigation that may result from disclosure in open sessions and ensures sound application of public funds. Kingfisher v. Oklahoma, , ¶¶ 18-19, , 173. Permitting qualified legislators access to executive sessions, even those discussing litigation, generally aligns with those goals. In the context of executive sessions and permitting qualifying legislators to attend under section 310, it is reasonable that the executive session maintains its confidentiality, even with the legislator present. After all, the Legislature appropriates funds and gives authority to state officers to apply specified funds and implement legislatively established policies. Okla. Const. art. V, §§ 35, 55. And the legislators exercising their right to attend an executive session are doing so as state actor members of a committee with jurisdiction over the state agency. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982) (state officials are state actors); see also Comment to Rule 1.13 of the Oklahoma Rules of Professional Conduct (discussing that in the context of lawyers representing governmental organizations, the "client" in some circumstances may be a specific agency, a branch of government, or the government as a whole).
¶25 Additionally, any concern about the motivation of a legislator attending the executive session in bad faith is speculative and disregards facts and law. First, state actors, as public representatives, are presumed to act in good faith. Freedom From Religion Foundation, Inc., v. Abbott, 58 F.4th 824, 833 (5th Cir. 2023). Second, if the concern were disclosure outside executive session, that concern also exists with a public body members. At least in some cases, public body members of the public body will disagree, whether with one another or the public body's attorney. Even then, however, there is no waiver of any privilege, to the extent it exists. Finally, just as presumably done with a state body's members, an attorney may instruct a legislator that the information discussed or otherwise shared in executive session is confidential.
¶26 Other states also permit third parties in an executive session and without regard to concern for attorney-client privilege. See ARIZ. REV. STAT. ANN. § 38-431 (2024); IND. CODE § 5-14-1.5-2(f) (2024); 98 Ga. Att'y Gen. Op. 3 (1998). Indeed, Oregon permits media representatives in all executive sessions, including those when the public body is consulting with legal counsel about current litigation or litigation likely to be filed, excepting only those sessions regarding minor students and when the media is an opposing party in litigation against the public body. OR. REV. STAT. § 192.660 (2024). There is no waiver of the attorney-client privilege, if it exists, and the statutes permit the governing body to require that individuals in an executive session, including the media, not disclose information therein. Id. Moreover, the presence of a person with an interest in the policies and procedure of the governmental body, such as a member of a legislative body, does not waive the attorney-client privilege. Humphries v. Chicarelli, 2012 WL 5930437, at 4 (S.D. Ohio Nov. 27, 2012) (determining that because of their interest in the matters discussed, the presence of incoming city council members, who were not yet sworn into office, in executive session with the current city council members and others did not waive the attorney-client privilege). Thus, except as discussed below, the attorney-client privilege does not generally alter the conclusion that a qualifying legislator shall be permitted to attend an executive session of a state agency, board, or commission.
¶27 There is an exception to this general rule if an otherwise qualifying legislator were directly involved in litigation with a state agency, board, or commission, and the public body convenes in executive session to discuss that litigation under section 307(B)(4). Under this limited fact pattern, the legislator's right to attend under section 310 likely cedes to the attorney-client privilege. The Oklahoma Supreme Court has recognized that governmental entities have a right to legal representation in litigation. State ex rel. Howard v. Okla. Corp. Comm'n, , ¶¶ 21-25, , 49-50. There, the Oklahoma Supreme Court permitted the Attorney General and in-house counsel for the Corporation Commission to appear in an original action when the Attorney General issued an opinion finding the statute at issue in the case was unconstitutional. Id. ¶¶ 33--35, 614 P.2d at 37--39. Extrapolating Howard here, if a public body, state body here, were involved in litigation with an otherwise qualifying legislator or the Legislature (i.e., a named party in the lawsuit), "under any concept of affording it any semblance of even-handed justice" and the right to confidential communications with its legal counsel, the legislator(s) must not attend the portion of the executive session of the public body that is convened when discussing that litigation under (B)(4). See Howard, ¶ 25, 614 P.2d at 50; accord OR. REV. STAT. § 192.660 (2024) (permitting representatives of the media to attend executive sessions except when the media organization is involved in litigation with, and adverse to, the public body).
¶28 It is, therefore, the official Opinion of the Attorney General that:

1. The provisions of are constitutional and do not violate the separation of powers requirement in the Oklahoma Constitution.
2. Under --excepting only executive sessions to discuss the purchase or appraisal of real property under (D) and if the Legislature or legislator were involved in litigation with the public body--a legislator may attend an executive session of a state agency, board, or commission if the legislator is a member of a committee with jurisdiction extending to the actions of that agency, board, or commission.
3. is withdrawn.
 

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
ROB JOHNSON
GENERAL COUNSEL
FOOTNOTES
 https://nondoc.com/2019/10/24/lawmakers-attend-ou-regents-executive-session/ 
 https://www.oklahoman.com/story/news/education/2024/07/31/education-board-again-denies-access-to-closed-session-to-legislators/74599511007/.
 Violations of the Act may have both civil and criminal repercussions. 25 O.S.2021, §§ 313-314. Civilly, actions taken in willful violation are invalid, entitle the successful party to reasonable attorney fees, and cause the minutes of the executive session to be public. (F), 313-314. Criminally, a willful violation of the Act is, if convicted, a misdemeanor punishable by a fine up to $500, one year in the county jail, or both. Id § 314.
 Lafalier v. Lead-Impacted Communities Relocation Assistance Tr., , ¶ 40, (determining that section 307(D) is "clear language...[of] an expression of legislative intent that no one other than those enumerated are allowed to attend executive sessions wherein the appraisal or purchase of real property is discussed." As an additional example, in 2023, Senator Nathan Dahm introduced a measure to subject the Judicial Nominating Commission to the Act and, relevant here, to preclude a member of the Legislature from attending under section 310 an executive session of the Judicial Nominating Commission. Senate Bill 1108, Introduced (2023). That bill was not enacted, and section 310 remains without any limit on section 307 executive session attendance.
 The Legislature does not exempt every discussion with an attorney in an executive session. Instead, protected communications are only those involving a "pending investigation, claim or action," and only where the public body and the attorney determine that disclosure will seriously impair the ability to deal with the matter in the public interest. There must be severe impairment and injury to the public interest if the communications are disclosed. See also (interpreting "pending" and "claim" to refer to "litigation or an administration action" that presently exists or is merely potential or anticipated). Taken together with the purpose of section 307(B)(4) authorizing executive sessions with legal counsel for confidential communications, "litigation or an administrative action" means civil or criminal litigation, or administrative proceedings like declaratory judgments under the Administrative Procedures Act ( -323).
 Even then, however, there is no waiver of any privilege, if it even exists. State entities are inanimate entities that can only speak through their official acts; the client is the agency, board, or commission and it must act through its official actions. Ambrose v. City of White Plains, 2011 WL 13290651 (S.D.N.Y. Sept. 30, 2011); Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985); Baldwin v. U.S., 2012 WL 1577501 (D. Colo. May 4, 2012) (citing Blue Lake Forest Products, Inc. v. U.S., 75 Fed. Cl. 779, 792 (Fed.Cl. 2007). The Oklahoma Supreme Court has consistently held that where statute expressly requires a majority of a commission to decide an action, that entity can only act as a single composite body, not through an individual member. Indep. Sch. Dist. No. 52 of Oklahoma County v. Hofmeister, , ¶ 44, , 495 (citing and acknowledging that the State Board of Education "takes official actions of the Board by a majority vote"); see also Crawford v. Corporation Commission, , ¶¶ 22-24, , 809; Southwestern Bell Telephone Co. v. Oklahoma Corporation Commission, , ; Hair v. Oklahoma Corporation Commission, , . Any unilateral and unauthorized action by an individual member of a state board does not waive the privilege. Galli v. Pittsburg Unified Sch. Dist., 2010 WL 4315768, at 4 (N.D. Cal. Oct. 26, 2010) ("The power to waive the privilege rests with the Board, and the actions of an individual Board member alone cannot waive the privilege."); see also Brown v. Unified Sch. Dist. No. 501, 2011 WL 111693, at 4 (D. Kan. Jan. 13, 2011).
 Though instructive for a limited exception to the general rule, the Howard case does not in any way impact other parts of this Opinion; instead, it is limited to the facts and litigation in that case.
 If a public body posts an agenda listing an executive session to discuss the purchase or appraisal of real property under section 307(D) or an executive session to discuss litigation that the Legislature or the legislator is involved and adverse to the state body, and one or more executive sessions for other authorized purposes, a qualifying legislator shall be permitted to attend the other executive session(s) consistent with this Opinion.